**Michael DOE, By and Through his parents and next friends, Mr. and Mrs. Bill DOE, Mr. Bill Doe, Mrs. Bill Doe**

**v.**

**METROPOLITAN NASHVILLE PUBLIC SCHOOLS, a body corporate and politic, Dr. Richard Benjamin, Director of Schools, in his official capacity.**

No. 3–95–1140.

United States District Court, M.D. Tennessee, Nashville Division.

July 1, 1996.

**552**

Jack Westmore Derryberry, Jr., Nashville, Tennessee, for plaintiff.

Judith Jo Shell, Nashville, Tennessee, John D. Kitch, Nashville, Tennessee, for defendant.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are Defendant's Motion for Summary Judgment (Docket No. 8) and Plaintiff's opposition thereto (Docket No. 18). The Court heard oral argument on Defendant's motion on June 28, 1996. For the reasons stated herein, Defendant's Motion for Summary Judgment (Docket No. 8) is GRANTED, and the result ordered by the administrative law judge in this case is AFFIRMED.

Plaintiff filed this civil action under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401, *et seq.*, for administrative review of the Final Order of an Administrative Law Judge, pursuant to 20 U.S.C. § 1415(e). The issue presented is whether the public school system should provide reimbursement for the costs of a

unilateral residential placement made by the parents of a seriously emotionally disturbed student who, prior to that placement, had never been in the public school system.[1]

Plaintiff and his parents are, and have been at all relevant times, residents of Nashville, Tennessee. From the time Plaintiff reached school age through the end of his enrollment at Grove School, the private residential school in Connecticut for which he seeks reimbursement, Plaintiff had been enrolled in only private schools. In other words, Plaintiff was never in the public school system in Nashville, Tennessee.

Plaintiff was enrolled first in St. Paul's, then in Westminster School, and then in Benton Hall, all private schools in Nashville. Following an incident in which Plaintiff assaulted a teacher at Benton Hall, Plaintiff's parents withdrew him from Benton Hall and enrolled him at Grove School in Connecticut from July of 1992 until June of 1994.

It is undisputed that the Defendant public school system had no involvement in or knowledge of the parents' decisions to place Plaintiff in any of the above-mentioned private schools, including Grove School. It is undisputed that the parents never consulted the Defendant public school system about enrolling Plaintiff in Grove School. Plaintiff's father testified that he did not consider asking anybody in the public school system for services when Plaintiff was required to leave Benton Hall.

Plaintiff's father is a physician specially trained in psychiatry, child psychiatry and psychoanalysis who has, as twenty-five percent of his practice, children and adolescents as patients. He knew that Defendant provides special education classes and that Defendant refers children on a regular basis to Westminster and Benton Hall.

Plaintiff's older sister was enrolled in the Defendant school system. Dr. Warren Thompson, a school system psychologist, testified that Plaintiff's mother contacted him a number of years ago to discuss her daughter's (Plaintiff's older sister) educational

---

1. The issue is NOT the appropriateness of Plaintiff's placement—either at present or at the    Grove School.

placement and handicapping conditions. Dr. Thompson stated that the parents were aware they could contact him about special education services. Plaintiff's father testified that their experience with the Defendant school system had not been helpful with their daughter; therefore, they did not place their son (Plaintiff) into that system.

Benton Hall, where Plaintiff was enrolled prior to Grove School, services a large number of students through contract with Defendant. Benton Hall's principal testified that he is familiar with the process for developing an individualized education program ("IEP"), the procedures for obtaining special education services through Defendant, and how to access those programs.

On October 20, 1993, after Plaintiff had been at Grove School more than one year, Plaintiff's attorney requested a multidisciplinary team ("M-team") meeting with Defendant to address the Plaintiff's educational needs and to discuss reimbursement for the past placement in the private residential program. A number of M-team meetings were held and various information was requested. During the time Defendant was conducting these M-team meetings and trying to get certification for Plaintiff and develop an IEP, as required by law, Plaintiff was in Madison, Connecticut, at the Grove School. On April 25, 1994, Defendant certified Plaintiff as learning disabled, but it denied the parents' request for reimbursement.

After a due process hearing before an administrative law judge ("ALJ"), as required by IDEA, the ALJ issued her Final Order in favor of Defendant. From that Order, the parents and Plaintiff have appealed.

Defendant has moved for summary judgment, arguing that because Plaintiff was never in the public school system and Defendant never had the opportunity to evaluate him and to design a suitable educational program, Plaintiff is not entitled to reimbursement for his parents' unilateral placement in the private residential school. Plaintiff's parents contend that they were not aware of the special education services offered by Defendant and, therefore, could not seek such services. Plaintiff also asserts that Defendant failed in its "child find" responsibilities [2] under the law and should be estopped to deny reimbursement in this case.

The IDEA was enacted "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c). The IDEA establishes procedural safeguards with respect to the provision of a free appropriate public education. 20 U.S.C. § 1415. Included in those procedural safeguards is the right to an impartial due process hearing by a State or local educational agency for parents or guardians who consider their child's IEP inappropriate. 20 U.S.C. § 1415(b)(2) and (c). Any party aggrieved by the findings and decisions made under subsection (b)(2) or (c) of Section 1415 may file a civil action for administrative review in the United States District Court. 20 U.S.C. § 1415(e).

On appeal from a determination by an ALJ in an IDEA case, the Court has "modified de novo review," meaning that the Court should give due weight to the ALJ's decision. *Metropolitan Nashville and Davidson County Sch. Sys. v. Guest*, 900 F.Supp. 905, 907 (M.D.Tenn.1995).

If Defendant acts through an IEP to place a child in a private setting, Defendant must pay the costs. *Id.* at 910. "The same is not true when the parents unilaterally place the child in a private setting." *Id.* at 911. The IDEA requires that the State must assure that:

> handicapped children in private schools and facilities will be provided special education and related services (in conformance with an individualized education program as required by this subchapter) at no cost to their parents or guardian, *if such children are placed in or referred to such schools or facilities by the State or appropriate local educational agency* as the

---

**2.** "Child-find" under the IDEA requires development and implementation of a plan to assure that as many disabled students as possible are identified and served by the public school system. *See* 20 U.S.C. § 1412(2); 34 C.F.R. §§ 300.128 and 300.220.

means of carrying out the requirements of this subchapter. . . .

20 U.S.C. § 1413(a)(4)(B) (emphasis added). But the local school system bears such financial responsibility only when the child is in the private facility or school because that local school system developed an IEP which placed him there. *Wise v. Ohio Dept. of Educ.*, 80 F.3d 177, 183 (6th Cir.1996).

The federal regulations concerning the IDEA provide:

> If a child with a disability has [free appropriate public education] available and the parents choose to place the child in a private school or facility, the public agency is not required by this part to pay for the child's education at the private school or facility.

34 C.F.R. § 300.403(a).

"It is axiomatic that a school system's obligation to provide free appropriate public education extends only to those students who are enrolled in that school system. Until the child is enrolled in the system, the system has no responsibility to evaluate or formulate a program for that student." *Robertson County School System v. King*, 22 IDELR 451 (M.D.Tenn.1995), *appeal docketed*, No. 95–5529 (6th Cir. April 25, 1995).

In *Robertson County*, a judge of this Court found that the mother had "preempted" the school system's responsibility. "Indeed, it would stretch the requirements of the IDEA beyond reason and common sense to suggest that the IDEA mandates that the School System expend time, money, and resources evaluating a child who is not within its control but is enrolled in the private school system." *Id.*

There is a difference between a unilateral parental transfer made after consultation with the school system, yet still without the system's agreement, and transfers made truly unilaterally, with no attempt to achieve a negotiated compromise and agreement on a private placement. Here, not only was there no attempt to achieve a negotiated compromise, but also the parents never even contacted the school system before enrolling their child in the private residential school.

The parents argue that they did not know about the services offered by the school system and did not know that they could be reimbursed for private school tuition costs. The parents basically allege that Defendant failed in its responsibilities to give them notice concerning their rights under the IDEA, and, therefore, the school system should be estopped to deny reimbursement.

■ The school system does have an obligation, under the IDEA, to seek out disabled children. Specifically, "participating states must implement policies and procedures such that all children residing in the State who are disabled, regardless of the severity of their disability, and who are in need of special education and related services, are identified, located and evaluated." *Ash v. Lake Oswego Sch. Dist.*, 980 F.2d 585, 589 (9th Cir.1992).

The ALJ in this case found that Defendant's efforts at fulfilling this obligation were inadequate. Nonetheless, the ALJ found that the lack of "child find" in this case was outweighed by the parents' actual knowledge about the school system and its services. Final Order, p. 9. The ALJ found that the parents chose a private school education for their son based on specific experiences they had with an older daughter educated in Defendant's public school system. *Id.* The ALJ also considered the father's educational background and work experience and the testimony of several witnesses as to the parents' knowledge of alternative programs within Defendant's system as indicative of the parents' knowledge. *Id.*

This case is not like *Hall v. Vance County Bd. of Educ.*, 774 F.2d 629 (4th Cir.1985), where the child was in the public school system and the system failed to inform the parents about their rights. In *Hall*, the school system's obligations to the disabled child were clear and the child was continuously available to the school district for assessment. *See Ash*, 980 F.2d at 589. Here, the child was never available to the public school system prior to his enrollment at Grove School. He was never in the public schools. His parents never approached the public school system to give that system an opportunity to evaluate and develop an IEP for Plaintiff.

■ If the school district provides a free appropriate public education, yet the parents

wish to place their child in a private school, the parent must pay the tuition. *McNair v. Oak Hills Local School Dist.*, 872 F.2d 153, 156 (6th Cir.1989). Here, the school system certainly could provide a free public education; we do not know whether it would have been appropriate for Plaintiff, because Defendant was never given the opportunity to develop it.

As the court stated in *Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149 (3d Cir.1994), "the court would be left to hazard conjecture or hypothesis as to what the Board of Education might have proposed" had it been given the opportunity before Plaintiff was enrolled in Grove School. *Id.* at 158. "[T]he right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP." *Id.* Here, the parents did not even give Defendant an opportunity to develop an IEP which they could contest.

For these reasons, the Court finds that the parents' unilateral placement of Plaintiff in a private residential school, without giving Defendant the opportunity to evaluate him and propose an IEP, precludes their reimbursement for the costs of that unilateral placement. Therefore, Defendant's Motion for Summary Judgment (Docket No. 8) is GRANTED, and the result of the decision of the ALJ is affirmed.

It is so ORDERED.