**Daniel CATLIN, individually and as a parent and natural Guardian of Dunbar Elliot Catlin a/k/a "Dell" Catlin, a handicapped child; Dundeen Catlin, individually and as a parent and natural Guardian of Dunbar Elliot Catlin a/k/a "Dell" Catlin, a handicapped child; and Dunbar Elliot Catlin, a handicapped child a/k/a "Dell" Catlin; Plaintiffs,**

v.

**Thomas SOBOL, Commissioner of Education of the State of New York; John F. Holdorf, Superintendent of Schools of the Edmeston Central School District; and the Board of Education of the Edmeston Central School District; Defendants.**

No. 86–CV–222.

United States District Court, N.D. New York.

Dec. 10, 1997.

**MEMORANDUM-DECISION
AND ORDER**

MUNSON, Senior District Judge.

## INTRODUCTION

Presently before the court are three motions. First, plaintiffs have filed a motion for a declaration that pursuant to the Individuals with Disabilities Education Act ("IDEA") and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Edmeston Central School District ("District") may not seek tuition reimbursement from plaintiffs. Alternatively, plaintiffs seek a declaration that if they are required to pay tuition that the District may not charge them for tuition from 1985–1994 at a rate in excess of the rate charged to regular education students or for any time after their son, Dell, reached the age of 18 on April 22, 1991.

In addition to opposing this motion, the defendants John Holdorf and the District (hereinafter referred to collectively as "the District") cross-move for summary judgment dismissing the complaint. Finally, defendant Thomas Sobol as Commissioner of Education for the State of New York ("the Commissioner") cross-moves to dismiss the complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The court heard oral argument in support of, and in opposition to, these motions on June 30, 1997, in Albany, New York, and reserved decision at that time.[1] The following constitutes the court's disposition of these motions.

## BACKGROUND

Familiarity with the facts of this case are assumed. However, the court will briefly set forth the issues that remain to be resolved after the Second Circuit's September 4, 1996, decision. Defendants appealed from this court's final judgment, holding that New York Education Law § 3202(4)(b) violates the Due Process Clause of the Fourteenth Amendment. *See Catlin v. Sobol*, 881 F.Supp. 789 (N.D.N.Y.1995). On appeal, defendants argued that this court erred in

Donoghue, Thomas, Auslander & Drohan, Fishkill, NY, for Plaintiffs; James Drohan, Lawrence W. Thomas, of counsel.

Hogan & Sarzynski, Binghamton, NY, for Defendants John F. Holdorf, Board of Education of the Edmeston Central School District; Edward J. Sarzynski, of counsel.

Dennis C. Vacco, Office of the Attorney General of the State of New York, Albany, NY, for Thomas Sobol; Mary Ellen Clerkin, of counsel.

---

1. With the court's permission, counsel for Thomas Sobol, Commissioner of Education of the State of New York, did not appear for oral argument.

granting plaintiffs' motion for summary judgment on the Due Process claim. Plaintiffs contended that the Equal Protection Clause, the IDEA, and § 504 provided alternative bases for affirming this court's decision.

The Second Circuit held that New York Education Law § 3202(4)(b) did not violate the Due Process Clause. It also found no violation of the Equal Protection Clause, the IDEA or the Rehabilitation Act of 1973 and therefore no alternative ground for affirming this court's decision. Accordingly, the Second Circuit reversed this court's decision to the extent that it held that § 3202(4)(b) violated the Due Process Clause. Thus, on remand, the only issue which remains to be decided is what person or entity is financially responsible for Dell Catlin's education between the years 1985–1994.

## DISCUSSION

### I.  Commissioner's Cross–Motion to Dismiss

The Commissioner argues that because the only issue which remains outstanding involves the District's claim for reimbursement of tuition and plaintiffs' attempt to resist that claim the complaint should be dismissed as to him. Plaintiffs have no objection to this cross-motion. Accordingly, the court **GRANTS** the Commissioner's cross-motion to dismiss the complaint against him.

### II.  Plaintiffs' Motion and the District's Cross–Motion

The District argues that plaintiffs may not pursue their motion for summary judgment unless and until plaintiffs seek and obtain leave of the court pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to amend their complaint to set forth the issues raised by this motion.

Plaintiffs' response to this argument is that there is no need for them to amend their complaint to seek relief from Massachusetts because they do not seek such relief nor is such relief necessary for the disposition of this case. *See* Thomas Reply Affidavit at ¶ 4. Basically, plaintiffs argue, as they have

throughout this litigation, that Dell is entitled to a free appropriate public education under the IDEA and if the District wants to be reimbursed for the education it provided to Dell, then it is the District, not plaintiffs, which must commence an action against Massachusetts. *See id.*

There is one problem with plaintiffs' argument. In *Catlin v. Sobol,* 77 N.Y.2d 552, 569 N.Y.S.2d 353, 571 N.E.2d 661 (1991), the New York Court of Appeals, *inter alia,* granted the District's cross-motion for summary judgment, declared Dell a non-resident of the District, and remitted the case to Supreme Court, Albany County, for determination of the tuition owed. *Id.* Thus, plaintiffs' assertion that they do not have to reimburse the District for Dell's tuition or that the District cannot seek reimbursement from them, but must instead seek it from Massachusetts, would appear to be foreclosed by the doctrine of collateral estoppel.

In their complaint, filed in February 1986, plaintiffs asserted seven causes of action. These causes of action alleged various constitutional and statutory violations by the Commissioner and the District. First, plaintiffs alleged that the defendants' actions violated their constitutional rights to equal protection and due process. Second, they alleged that defendants violated the Education for All Handicapped Act and the Rehabilitation Act of 1973. Third, they alleged that defendants violated their rights to reside in various states without voiding their son's right to a free appropriate public education in violation of the Privileges and Immunities Clause of the United States Constitution.[2] Finally, they sought an adjudication and declaration of the respective rights and responsibilities of the parties relative to defendants' obligation to provide their son, Dell, with a free appropriate public education. More specifically with respect to this last cause of action, plaintiffs sought "[a] declaratory judgment adjudicating section 3202(4)(b) of the New York State Education Law to be unconstitutional on its face and as applied by defendants to plaintiff Dell Catlin, and enjoining defendants from further violation of the con-

---

**2.** Plaintiffs have not pursued this claim.

stitutional rights of plaintiffs; ..." *See* Complaint at WHEREFORE Clause at ¶ f.

After reviewing plaintiffs' complaint it is clear that plaintiffs did not raise the issue of tuition reimbursement. Although they sought a declaratory judgment, this cause of action pertained **only** to the constitutionality of § 3202 of New York Education Law. Accordingly, the court concludes that in order for plaintiffs to raise the issue of tuition reimbursement, they would have to seek leave to amend their complaint.

Although plaintiffs have not formally moved to amend their complaint, the court will assume, for the sake of discussion, that they have made such a motion. In deciding whether to grant such a request, the court would be governed by the following rules. "Absent a mandate which explicitly directs to the contrary, a district court upon remand can permit the plaintiff to 'file additional pleadings, vary or expand the issues....' *Rogers v. Hill,* 289 U.S. 582, 587–88, 53 S.Ct. 731, 734, 77 L.Ed. 1385 (1933). 'While a mandate is controlling as to matters within its compass, on the remand a lower court is free as to other issues.' *Quern v. Jordan,* 440 U.S. 332, 347 n. 18, 99 S.Ct. 1139, 1148 n. 18, 59 L.Ed.2d 358 (1979) (quoting *Sprague v. Ticonic National Bank,* 307 U.S. 161, 168, 59 S.Ct. 777, 781, 83 L.Ed. 1184 (1939))." *Nguyen v. United States,* 792 F.2d 1500, 1502 (9th Cir.1986).

Assuming that as part of their motion to amend plaintiffs would seek to add Massachusetts as a defendant to this action and assert a cause of action for tuition reimbursement, such an motion would not be foreclosed by the Second Circuit's mandate. Thus, there would be no procedural impediment to plaintiffs seeking the court's leave to amend their complaint in this manner. This having been said, the decision as to whether or not to grant leave to amend remains within the discretion of the district court. *See Zahra v. Town of Southold,* 48 F.3d 674 (2d Cir.1995). In reviewing the exercise of such discretion, however, the Second Circuit has oft repeated that "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the

part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ..., etc.—the leave sought should, as the rules require, be 'freely given.'" *Rachman Bag Co. v. Liberty Mutual Ins. Co.,* 46 F.3d 230, 235 (2d Cir.1995) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Moreover, "[d]elay alone unaccompanied by such a 'declared reason' does not usually warrant denial of leave to amend." *Id.* (citing *State Teachers Retirement Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981)).

Assuming plaintiffs made a motion to amend, the District asserts two reasons why the court should deny such a request. First, although recognizing that delay alone generally does not warrant denial of such a motion, the District argues that unduly excessive delay is a grounds for denying such leave. *See* District's Memorandum of Law at 11 (citing 3 James W. Moore, *Moore's Federal Practice* ¶ 15.15[2] at 15.45 (3d ed.1997); *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir. 1995)). Alternatively, the District contends that under a theory analogous to laches, delay itself can be evidence of bad faith, justifying denial of leave to amend. *See id.* at 12 (citing *Adams v. Gould,* 739 F.2d 858, 868 (3d Cir.1984); *Transport Workers Union of Philadelphia, Local 234 v. Southeastern Pennsylvania Transportation Authority,* 137 F.R.D. 220, 224 (E.D.Pa.1991); 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1488 at 688–91 (2d ed.1990)).

Applying these principles to the present case, the District argues that the court should deny the motion because plaintiffs waited more than eleven years to raise this new issue even though they had ample opportunity to assert the amendment earlier. In this regard, the District notes that plaintiffs were well aware that the District intended to pursue a collection action if and when this court determined that Dell was not a resident of the District under § 3202(4)(b) and that § 3202(4)(b) was constitutional. Finally, the District asserts that the failure of plaintiffs to seek leave to amend prior to, or in conjunction with, the bringing of the pres-

ent motion, indicates a lack of due diligence and good faith.

■ Although plaintiffs' decision to raise the issue of tuition reimbursement at this late date is troublesome, the court does not believe that plaintiffs have acted in bad faith. Certainly, they could have raised this issue as an alternative to their claim that the statute violated their constitutional rights. However, given the fact that this court, as well as the state Supreme Court and the Appellate Division, agreed with their position, and in fact granted summary judgment in their favor, they had little incentive to raise this issue prior to either the New York Court of Appeals' decision which ruled against them on the issue of Dell's residency in 1991 or the Second Circuit's decision against them in 1996. Therefore, although the delay might be characterized as "undue," the court concludes that this lateness alone does not constitute a legitimate basis for denying plaintiffs leave to amend.

Nonetheless, given the length of this delay together with the pendency of the state court proceeding, it still would be well within the court's discretion to deny such a motion. This is especially so in light of the fact that the issue plaintiffs seek to raise in this action is the same one which remains to be decided in the state court proceeding. Thus, dismissal of this action would not prejudice plaintiffs because they could raise the very same arguments they seek to raise in this court in the state court action.

An alternative grounds for denying plaintiffs' motion to amend their complaint is that the amendment appears to the court to be futile. As noted above, the court assumes that plaintiffs, at the very least, (1) would seek to add Massachusetts, their place of residence, as a defendant to this action and (2) would assert a new cause of action seeking a declaration that they are not required

to reimburse the District for Dell's education because this responsibility rests with Massachusetts. This assumption is based upon plaintiffs' contention that the District's sole remedy for tuition reimbursement is to seek such monies from Massachusetts. Plaintiffs argue that this conclusion is compelled by the Second Circuit's holding that when the Catlins moved to Massachusetts in 1985, Dell was presumed to be a resident of Massachusetts. According to plaintiffs, this holding leads to the inescapable conclusion that when the Catlins moved to Massachusetts, that state became responsible for seeing that Dell received a free appropriate public education.

■ At the present time, Massachusetts is not a party to this action. However, in order for this court to adjudicate this claim; i.e., that Massachusetts must reimburse the District for the cost of Dell's education, Massachusetts would have to be made a party. Otherwise, any ruling by this court would be construed as an advisory opinion. *See Ostman v. St. John's Episcopal Hosp.*, 918 F.Supp. 635 (E.D.N.Y.1996); *Rabinowitz v. New Jersey State Board of Educ.*, 550 F.Supp. 481 (D.N.J.1982). Moreover, any decision which this court rendered in Massachusetts' absence would not collaterally estop Massachusetts from relitigating this very same issue in another proceeding.

Assuming for a moment that plaintiffs sought leave to amend their complaint to add Massachusetts as a party, there are two issues which the court would have to address to determine whether or not to grant plaintiffs' request. First, if, for whatever reason, the court were to find that Massachusetts could not be joined, but was an indispensable party because complete relief could not be afforded in Massachusetts' absence, then the court would have to decide whether to dismiss the action. Relying upon the factors set forth in Rule 19(b) of the Federal Rules of Civil Procedure,[3] the court would have to

---

**3.** Rule 19(b) of the Federal Rules of Civil Procedure provides, in pertinent part, that

If a person ... cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered

by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's

conclude, based upon the facts of this case, that any judgment entered in Massachusetts' absence would be prejudicial to both Massachusetts and the District. Moreover, a judgment rendered in Massachusetts' absence would not be adequate. Accordingly, were it faced with this issue, it is very likely that the court would conclude that this action should be dismissed.

If, on the other hand, the court determined that there was no procedural impediment to joining Massachusetts as a party, the court still would have to determine whether allowing plaintiffs to add Massachusetts as a party to this action would be a futile amendment. This would be the case if, as the District argues, the Catlins and not Massachusetts are financially responsible for Dell's education.

Relying upon the IDEA and § 504 of the Rehabilitation Act, plaintiffs assert that Massachusetts is financially responsible for Dell's educational placement. In this regard, plaintiffs argue that it would be inconsistent with the regulatory mandate that a free appropriate public education be provided "without cost to a handicapped person or his parents" to allow a tuition reimbursement action to proceed against them. Moreover, they assert that the "at no cost to parents" provision of the IDEA would be effectively thwarted by shifting the responsibility from the states and local education authorities to parents.

The District does not dispute that under certain circumstances the state in which the parents reside is financially responsible for the costs of educating a handicapped child, even if that child is educated out-of-state. However, under the circumstances of this case, the District asserts that Massachusetts is not responsible for Dell's tuition because the Catlins unilaterally made the decision to educate Dell in the District, rather than in the local district in Massachusetts in which they reside.

There is no dispute in the present case that the District was responsible for providing a free appropriate public education to Dell since he lived within the boundaries of the District. What is disputed, however, is who is responsible for paying for the education which the District provided to Dell— the Catlins or the State of Massachusetts.[4]

The two cases upon which the District relies to support its contention that the Catlins, and not Massachusetts, must reimburse the District for Dell's tuition present somewhat different factual scenarios than the one present in the instant case. In both of those cases, the parents unilaterally changed their children's educational placement. Here, rather than changing Dell's placement, the Catlins unilaterally chose to maintain his placement in the District when they moved to Massachusetts. Despite this factual difference, however, the court finds the reasoning of these decisions persuasive and applicable to the present case.

In *Wise v. Ohio Dept. of Educ.*, 80 F.3d 177 (6th Cir.1996), the Sixth Circuit was faced with a situation in which two sets of parents who resided in Michigan had unilaterally removed their children from their educational placement in Michigan and moved them to an institution in Ohio. Ohio sought reimbursement from the parents for the education of their children. The district court awarded summary judgment to the parents who were seeking to bar Ohio from collecting tuition for the special education services provided in Ohio to their children. The Sixth Circuit reversed this decision, holding that having unilaterally changed the educational placement of their children, the parents were no longer entitled to have their children educated at public expense.

The court in *Wise* began its analysis by noting that the "IDEA does require states to provide free public education to children within the state." *Wise*, 80 F.3d at 182. Moreover, the court stated that "Congress

---

absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed.R.Civ.P. 19(b).

**4.** After the Second Circuit's decision which rested, in part, upon the New York Court of Appeals'

decision that Dell was not a resident of the District, but rather a resident of Massachusetts where his parents resided, there is no longer any question that the District is not financially responsible for Dell's education.

defined 'within' as including children whose parents reside in the state but who receive services in or from another state." *Id.* "Nevertheless, Congress defined the scope of 'within the state' to place financial responsibility for children's special education on the local agency ('LEA'); i.e., the local school district, in which the parents reside." *Id.*

The court explained that a child might be placed in another state because, during the course of developing an IEP for a child, the parents' LEA might determine that no in-state facility or school could provide the appropriate special education or related services. *See id.* (citing 20 U.S.C. § 1401(a)(18)). In addition, the LEA that places the child must exercise supervisory authority over the service provider to ensure that the child is receiving the appropriate education. *See id.* at 183 (citing 20 U.S.C. § 1412(6)). Finally, the court noted that under the statute, the parents' LEA retains financial responsibility for the cost of services provided by another state or facility. *See id.* (citing 20 U.S.C. § 1413(a)(4)(B)). However, the court concluded that the parents' LEA bears such financial responsibility **only** when the child is in the out-of-state facility or school because the parents' LEA developed an IEP that placed her there. *See id.*

Based upon these principles, the *Wise* court concluded that "[p]arents generally render their children ineligible for free special education by unilaterally changing their child's educational placement." *Id.* (citing *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993)). Moreover, the court warned that " '[p]arents who ... "unilaterally change their child's placement during the pendency of the review proceedings, without the consent of the state or local school officials, do so at their own financial risk." ' " *Id.* at 184 (quoting *Florence County Sch. Dist. Four v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 366, 126 L.Ed.2d 284 (1993) (quoting in turn *School Comm. of Burlington, Mass. v. Department of Ed. of Mass.,* 471 U.S. 359, 373–74, 105 S.Ct. 1996, 2004, 85 L.Ed.2d 385 (1985))).

The rationale for this conclusion rests upon the IDEA's definition of "free appropriate public education" as "education 'provided in conformity with the individualized education program required under section 1414(a)(5) of this title.' " *Id.* (quoting 20 U.S.C.A. § 1401(a)(18)(D)). Therefore, if parents unilaterally change their child's educational placement by taking her out of her current placement the child is not receiving an education in conformity with the IEP specifically devised for her.

As noted above, the basic difference between the present case and *Wise* is that in *Wise* the parents changed the educational placement of their children without consulting their LEA or objecting to the IEP which had been developed by their LEA for their children. Here, the Catlins maintained Dell's educational placement in the District when they moved to Massachusetts. When they moved, they did not consult with their new LEA about Dell's education. Therefore, their Massachusetts LEA did not have the opportunity to develop an IEP for Dell. Such an IEP would have included a determination as to whether Dell could receive the free appropriate public education to which he was entitled within the Massachusetts LEA or whether the appropriate educational placement for Dell was in the District.

It follows from *Wise* that having had no opportunity to develop an IEP for Dell, the Massachusetts LEA cannot be held financially responsible for the education which Dell received in the District. Moreover, although the Catlins did not "unilaterally change" Dell's educational placement, they did "unilaterally choose" Dell's educational placement in contravention of the requirements of the IDEA, and by doing so they ran the risk that they would be held financially responsible for their decision.

Another case which illustrates this point is *Doe v. Metropolitan Nashville Pub. Sch.,* 931 F.Supp. 551 (M.D.Tenn.1996). The issue in *Doe* was whether a public school system should provide reimbursement to the parents for the costs of a unilateral residential placement made by the parents of a seriously emotionally disturbed student who, prior to that placement, had never been in the public

school system. In *Doe*, the parents resided in Nashville. From the time the child reached school age through the end of his enrollment at the Grove School, a private residential school in Connecticut for which the parents sought tuition reimbursement, the child was enrolled only in private schools. The defendant public school system had no involvement in or knowledge of the parents' decision to place their child in any private school.

The court held that if the school district acts through an IEP to place a child in a private setting, the school district must pay the costs. However, " 'the same is not true when the parents unilaterally place the child in a private setting.' " *Doe*, 931 F.Supp. at 553 (quoting *Metropolitan Nashville and Davidson County Sch. Sys. v. Guest*, 900 F.Supp. 905, 911 (M.D.Tenn.1995)). The court explained that " '[i]t is axiomatic that a school system's obligation to provide free appropriate public education extends only to those students who are enrolled in that school system. Until the child is enrolled in the system, the system has no responsibility to evaluate or formulate a program for that student.' " *Id.* (quoting *Robertson County School System v. King*, 22 IDELR 451 (M.D. Tenn.1995), *appeal docketed*, No. 95–5529 (6th Cir. April 25, 1995)).

In the present case, Dell was never enrolled in the school district in Massachusetts in which his parents resided. Therefore, under *Doe* that district had no responsibility to evaluate and formulate an IEP for him. Consequently, Massachusetts has no financial responsibility for Dell's continued educational placement in the District.

Although there are factual differences between *Doe* and *Wise* on the one hand and the present case on the other, the well-reasoned decisions which the courts reached in those two cases lead this court to conclude that under the circumstances of this case Massachusetts bears no financial responsibility for Dell's educational placement within the District. Therefore, it would be futile for the court to allow plaintiffs to amend their complaint to join Massachusetts as a party to this action because neither plaintiffs nor the District would be able to state a claim upon which relief could be granted against Massachusetts.

## CONCLUSION

For the reasons stated above, the court concludes that before plaintiffs can assert the issues raised in their motion they would have to seek the court's leave to amend their complaint to add Massachusetts as a defendant to this action and to assert a cause of action for tuition reimbursement. Assuming that plaintiffs were to make such a motion, the court holds that, despite the general rule that leave to amend should be freely given, this is one of those infrequent cases in which the court should deny such relief because any such amendment would be futile. Accordingly, the court **GRANTS** the District's cross-motion for summary judgment dismissing the complaint. In addition, the court **GRANTS** the Commissioner's motion to dismiss the complaint against him. Finally, the court **DENIES** plaintiffs' motion as moot. In light of these rulings, the court instructs the Clerk of the Court to enter judgment dismissing the complaint in its entirety with prejudice.

**IT IS SO ORDERED.**