Robert J. Murphy, Jr., Robert J. Murphy, Sr., and his wife, Ann N. Murphy, Petitioners *v.* Commonwealth of Pennsylvania, Department of Education, Respondent.

Argued November 15, 1985, before Judges DOYLE and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*Christopher C. Conner*, with him, *Jack M. Stover*, for petitioners.

*Mary Beth O'Hara Osborne*, Assistant Counsel, with her, *Mary M. Rogers*, Chief Counsel, for respondent.

*Paul L. Stevens, Curtin and Heefner*, for intervenor, Towanda Area School District.

OPINION BY JUDGE DOYLE, January 30, 1986:
This is an appeal by Robert J. and Ann N. Murphy (Petitioners or Parents) and their son, Robert Jr. (Robert), from an order of the Secretary of Education (Secretary) adopting the recommendation of a hearing officer which denied Petitioners reimbursement for expenses incurred in connection with enrolling Robert, a learning disabled student, in an out-of-state private school, Landmark School (Landmark), in Prides Crossing, Massachusetts.

Under Department of Education regulation 13.11(a), 22 Pa. Code §13.11(a) "[a]ll handicapped school-aged persons identified shall be provided with an appropriate program of education or training, or both . . .", said program to be determined by procedures established by the Department. An appropriate program is defined as:

A program of education or training for exceptional school-aged persons which meets their individual needs as agreed to by a parent, school district, or intermediate unit personnel; or as ordered by a hearing officer; or upon appeal as ordered by the Secretary of Education.

22 Pa. Code §13.1.

Furthermore, 22 Pa. Code 13.2(a), which is entitled "Statement of purpose," provides in pertinent part, "[i]t shall be the policy of the [State] Board [of Education], through the Secretary, to provide exceptional school-aged persons with quality special education programs and services which will ultimately enable them to participate as fully as possible in appropriate activities of daily living."

Under Department regulation 13.11(b) the primary responsibility for providing an appropriate program rests with the school district. The United States Supreme Court, in the context of construing the Education of the Handicapped Act (Act), 20 U.S.C. §§1401-1451, the rationale of which underlies the Department's regulations on this subject matter, has held that a state and its school district comply with the Act if they provide "educational instruction specially designed to meet the unique needs of the handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Board of Education v. Rowley*, 458 U.S. 176, 188-89 (1982). What the Act does not require is that a state or school district "maximize the potential of each handicapped child commensurate with the opportunity provided nonhandicapped children." *Id.* at 200. Similarly, this Court, in examining the Department's regulations, has held that a "school district is not required to devise a program of education which makes the *best* use of a student's abilities," but must only develop an

appropriate program for the needs of each child.
*Shanberg v. Secretary of Education,* 57 Pa. Common-
wealth Ct. 384, 386, 426 A.2d 232, 233 (1981) (empha-
sis added).

Department regulations recognize that in certain
instances an appropriate program of education may
consist of placement in an out-of-state program. 22
Pa. Code §13.11(d)(8). But such placement is subject
to regulation 13.12(a) which restricts out-of-state
placement in approved schools to multi-handicapped
school-aged persons. In addition, under this regula-
tion before placement in an out-of-state facility, the
parents, the school district superintendent, and the
intermediate unit executive director must agree that
there is *no appropriate placement in the Common-
wealth* and the Secretary must concur.

With this summary of the applicable law in mind
we now move to an examination of the instant case,
which has been before us previously. In *Murphy v.
Department of Education,* 74 Pa. Commonwealth Ct.
499, 460 A.2d 398 (1983) (Murphy I) Petitioners ap-
pealed the decision of the Secretary recommending
that Robert be placed in Wordsworth Academy
(Wordsworth), a private school located in Fort
Washington, Pennsylvania. The Secretary was of the
view that Wordsworth could provide Robert with an
appropriate program of education. In *Murphy I* a
review of the record disclosed that the decision of the
Secretary was not supported by substantial evidence.[1]
Accordingly, we remanded the matter for further pro-

---

[1] We noted in *Murphy I* that the only evidence to support the
conclusion that Wordsworth was appropriate was a bare statement
in a letter written by the Education Director at Wordsworth which
read, "This letter is to indicate the Wordsworth Academy would be
able to implement the I.E.P. [Individualized Education Plan] for
Robert Murphy which we reviewed together on Tuesday, 9/15/81."
*Id.* at 503, 460 A.2d at 400.

ceedings "to select an 'appropriate' program of education for Robert." *Id.* at 506, 460 A.2d at 401. We also found in *Murphy I* that Petitioners' rights were violated because of the hearing officer's ex parte communication.

Subsequent to our remand a question arose as to whether our order in *Murphy I* granted only prospective relief. Accordingly, on September 30, 1983 we issued a clarifying order directing that an appropriate program of education for Robert be considered with respect to the period from the spring of 1980 through the school term of 1982-83. The Secretary was also specifically ordered to consider the appropriateness of both in-state and out-of-state schools and the subject of reimbursement.

On remand additional testimony was taken and the Secretary adopted the determination of the hearing officer that during the relevant time period, Wordsworth could have provided Robert with an appropriate program of education. Because of the determination that such a program was available in Pennsylvania the hearing officer held that Petitioners were not entitled to reimbursement for expenses incurred in enrolling Robert at Landmark.

In exceptions filed before the Secretary, Petitioners contended that the finding that Wordsworth could provide an appropriate program for Robert was not supported by substantial evidence and that their due process rights had been violated by a pattern of delay and neglect by the Towanda Area School District (District) and by the ex parte communication noted above. Essentially the same issues have been raised before us. We must, however, affirm the decision below unless there is a violation of constitutional rights or an error of law or unless the findings of fact are unsupported by substantial evidence. *Murphy I.*

Petitioners' primary argument is that the record is devoid of substantial evidence to support the conclusion that Wordsworth could provide an appropriate program for Robert. Inasmuch as we have already determined in *Murphy I* that the original record established did *not* contain substantial evidence, we will now examine the record established at the hearing on remand to ascertain whether it contains the requisite substantial evidence to support the Secretary's conclusion.

Michael Curcio, the Education Director of Wordsworth, who has over eighteen years of experience in the field of special education, testified that he received Robert's evaluation reports, his individualized education plan (IEP)[2] (which was prepared by the

[2] An IEP includes:

(1)   a statement of the present level of educational performance of the person;

(2)   a statement of annual goals which describes the expected behaviors to be achieved through the implementation of the Individualized Education Program of the person;

(3)   a statement of short-term instructional objectives;

(4)   a statement of specific educational services to be provided to the child, including a description of all special education and related services required to meet the unique needs of the child, any special instructional media and materials to be provided, and the type of physical education program in which the child will participate;

(5)   a description of the extent to which the child will be able to participate in regular education programs;

(6)   the projected date for initiation and the anticipated duration of services; and

(7)   appropriate objective criteria, evaluation procedures, and schedules for determining, on at least an annual basis, whether the instructional objectives are being achieved.

22 Pa. Code §341.15. The IEP is developed in a conference attended by a representative of the school district or the intermediate unit, the student's teacher and parents, and the student, if appropriate. 22 Pa. Code §341.16.

District and agreed to by Robert's parents as being appropriate), as well as input from the District and from intermediate unit personnel concerning Robert. Curcio then testified that Robert's "educational characteristics were consistent with the population that Wordsworth was serving" and hence maintained that the school could also successfully meet Robert's needs. Three other education experts also offered testimony corroborating the opinion of Curcia.[3]

Petitioners concede that Wordsworth was capable of providing an appropriate *academic* program for Robert, but contend that it was incapable of providing him with an appropriate social and emotional environment because Wordsworth integrates learning disabled students with socially and emotionally disturbed children. Petitioners cite *Levy v. Department of Education,* 41 Pa. Commonwealth Ct. 356, 399 A.2d 159 (1979) for the proposition that Robert was legally entitled to be placed in an educational setting with a social environment and student population which were uniquely suited to his educational and emotional needs. There *is* however competent testimony that Robert would have been grouped with children whose problems were similar to his. Hence the Secretary could reasonably conclude that Robert's social and emotional needs would be met.

While it is true that Petitioners presented expert testimony that because of Wordsworth's mixed category groupings that school would be an inappropriate placement for Robert, the hearing officer chose to reject this testimony and preferred instead the Dis-

---

[3] Petitioners assert that the hearing officer erred in sustaining objections to their attempts to show the financial interests of Wordsworth in the present matter. We agree with the Department that such interests are irrelevant inasmuch as by the time the remand hearing was held Robert had already graduated from high school and was attending a community college.

trict's expert witnesses. Considering that neither of Petitioners' two experts had personal or direct knowledge of the then current educational programs at Wordsworth, we can not say that the hearing officer acted improperly in disgarding their testimony.

Petitioners also assert that the District's witnesses offered conclusory testimony. But, in proper cases an expert is permitted to express an opinion even when it constitutes the ultimate answer to the issue in the case. *First Methodist Episcopal Church v. Bangor Gas Co.*, 388 Pa. 115, 130 A.2d 517 (1957). Curcio recounted in detail the information he had considered in reaching his conclusion that Wordsworth was appropriate for Robert. Moreover, Curcio testified not to the *legal* appropriateness (a matter for the hearing examiner) but to the *educational* appropriateness. This testimony was proper and, in fact it was what this Court directed should be done when we remanded in *Murphy I.*

Finally, Petitioners attack Curcio's testimony by maintaining that because Wordsworth had not completed all the steps which make up its formal admission process it could not have known the extent and complexity of Robert's needs. Wordsworth's admission procedures included, *inter alia,* both parent and student interviews. The Secretary found that "Wordsworth was unable to complete its own admission procedures because Robert's father did not make any attempt to look into the district's recommendation that Wordsworth could have provided Robert with an appropriate program of education." The Secretary also found that "Robert's father intended to keep Robert at Landmark no matter what." While we may not agree with this characterization, we are bound by the Secretary's assessment of conflicting testimony based on credibility factors. And it is clear that if parents will not make their child available or cooperate with the

District so that it may be ascertained whether there is an appropriate program of in-state education, a demand for reimbursement for expenses incurred at an out-of-state school is not warranted. *Welsch v. Department of Education,* 42 Pa. Commonwealth Ct. 41, 400 A.2d 234 (1979).

Petitioners' other major argument, *i.e.,* that due process was violated in their original hearing, need not be considered now inasmuch as the due process violations alleged were cured by a hearing on remand and the delays in holding the hearing were attributable to both parties. Accordingly, Petitioners' contention that *Krawitz v. Department of Education,* 48 Pa. Commonwealth Ct. 155, 408 A.2d 1202 (1979), wherein we found a delay to be prejudicial, controls is not applicable here.

Because we have found substantial evidence of record to support the Secretary's finding that an appropriate program for Robert existed in Pennsylvania we need not consider whether Landmark was appropriate or whether Robert met the other requirements for out-of-state placement under regulation 13.12(a) (including being multi-handicapped). Inasmuch as substantial evidence demonstrates that an appropriate program for Robert could have been provided within the Commonwealth, the Secretary acted properly and in compliance with Department regulations in refusing to approve placement at Landmark and in refusing to approve reimbursement for costs spent in enrolling Robert at Landmark. Accordingly, we must affirm the decision of the Secretary.

ORDER

Now, January 30, 1986, the order of the Secretary dated March 1, 1985 is hereby affirmed.

Judge ROGERS did not participate in the decision in this case.