**L.K. on behalf of her son, J.H., as well as on her own behalf, Plaintiff,**

v.

**The BOARD OF EDUCATION FOR TRANSYLVANIA COUNTY, a/k/a Transylvania County Public Schools, Defendant.**

No. Civ.1:99CV7.

United States District Court,
W.D. North Carolina,
Asheville Division.

July 28, 2000.

Paul Lawrence Erickson, Law Firm of Paul L. Erickson, P.A., Asheville, NC, for L.K., on behalf of her son, J.H., as well as on her own behalf, plaintiff.

Cynthia S. Lopez, Christopher Z. Campbell, Roberts & Stevens, P.A., Asheville, NC, for Transylvania County Board of Education, defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Defendant's motions to dismiss and for summary judgment, Plaintiff's motion for summary judgment and remand, and Plaintiff's motion for leave to exceed page limits. The Defendant's motion to dismiss was disposed of by Order filed July 27,

1999. The Plaintiff's motion to exceed the page limit is denied. For the reasons stated herein, the Defendant's motion for summary judgment is granted.

## I. PROCEDURAL HISTORY

LK, on behalf of her child, JH, initiated this action pursuant to the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400, *et. seq.* 20 U.S.C. § 1401(a)(1)(A)(i). Plaintiff claims she is entitled to reimbursement for the cost of private school tuition from the Transylvania County Board of Education (County), 20 U.S.C. § 1401(a)(18).[1] On October 14, 1998, Administrative Law Judge (ALJ) Dolores O. Smith found the Plaintiff had failed to petition for a due process hearing within a timely fashion. Plaintiff filed an administrative appeal and State Review Officer (SRO) Ralph G. Hall affirmed the ALJ's decision on December 13, 1998. Having exhausted her administrative remedies, LK brought this action pursuant to the IDEA. 20 U.S.C. § 1415(e)(2).

## II. STANDARD OF REVIEW

Section 1415(e)(2) of Title 20, United States Code, provides in pertinent part that in "any action brought under this [statute] the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." The parties here have not requested a hearing and the undersigned finds the matter may be determined on the basis of the motions.

 The Supreme Court has instructed that courts reviewing a state's determination in IDEA cases must make " 'independent decision[s] based on a pre-

ponderance of the evidence.' " *Board of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 205, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) (quoting S.Conf.Rep. No. 94–455, p. 50 (1975), U.S.Code Cong. & Admin.News 1975, p. 1503). The Fourth Circuit refined this standard in *Doyle v. Arlington County Sch. Bd.*, 953 F.2d 100 (4th Cir. 1991), where it held that findings of fact by ALJ's and hearing officers in IDEA cases "are entitled to be considered *prima facie* correct, akin to the traditional sense of permitting a result to be based on such fact-finding, but not requiring it." *Id.* at 105. In essence, district courts must " 'make an independent decision based on a preponderance of the evidence, giving due weight to state administrative proceedings.' " *Board of Educ. of Montgomery County v. Brett Y*, 155 F.3d 557 (table), 1998 WL 390553 *5 (4th Cir.1998) (quoting *Doyle*, at 103). As to conclusions of law, the determinations made in the administrative proceedings are reviewed *de novo*. *Milford Sch. Dist. v. William F.*, 129 F.3d 1252 (table), 1997 WL 696108 (1st Cir.1997); *Dell v. Board of Educ., Tp. High School Dist.*, 32 F.3d 1053, 1058 (7th Cir.1994). The burden of proof, however, falls on the party challenging the administrative findings. Barnett v. Fairfax County Sch. Bd., *927 F.2d 146, 152 (4th Cir. 1991).*

## III. FINDINGS OF FACT

JH was enrolled in the Transylvania County Public Schools from August 1990 through June 1996. Exhibit 8, Affidavit of Peggy Singleton, *contained in* Defendant's Portions of the Administrative Record. In his kindergarten year, JH's teacher advised LK that he had difficulty settling down due to his desire to socialize with other students. Exhibit 6, Deposition of

---

1. That section defines the term "free appropriate public education" as "special education and related services that—(A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State

educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title."

LK, *contained in* Administrative Record, at 11–12. JH's kindergarten teacher advised LK to be more consistent in her discipline of the child. *Id.* The same complaint was heard from JH's first grade teacher, who again reiterated that LK needed to be consistent with discipline. *Id.*, at 13. LK did not request any formal intervention although JH's grades were not good. *Id.*, at 15. In the second grade, JH's teacher suggested that Ritalin might be appropriate for him and advised LK to consult his physician. *Id.* JH's pediatrician was consulted and he provided LK with a questionnaire to be completed by the teacher. *Id.*, at 16. This was done and LK testified that the doctor told her JH had attention deficit hyperactivity disorder (ADHD). *Id.* Although he prescribed Ritalin which had to be given during the school day, he did not make a written report for school officials. *Id.* After JH began taking Ritalin, his teacher felt his behavior was much better although his grades did not improve. *Id.*, at 17. LK stopped the medication because she felt his teacher was using it for behavior control.[2] *Id.*, at 18. Despite her anger toward the teacher, LK did not complain to the teacher or the principal. *Id.* And she did not consult with JH's physician about stopping the medication, either before or thereafter. *Id.*

LK testified that from the beginning of JH's third grade year, his teacher felt he should be taking Ritalin. *Id.*, at 20. About this time, LK learned that the school had an obligation to test JH for any learning disabilities. *Id.*, at 21–22. She asked JH's third grade teacher to have him tested. *Id.* However, before any testing was done and within the first few weeks of school, LK decided to move JH to a different school with a closed classroom setting. *Id.*, at 21, 24. LK thought he would function better in a more controlled environment. *Id.* As a result, JH was transferred to a different school; how-

ever, he continued to distract other students and his reading was not at age level. *Id.*, at 27. After the third grade, JH attended summer school to improve his reading. *Id.* LK was referred by the school for testing at Trend, which was performing testing for public schools which did not have adequate staffing to conduct the same. *Id.*, at 28–29. Officials at Trend told LK that the school had been failing to perform its share of testing and advised that Trend would not test JH. *Id.* LK was told to go back to the school and demand testing. *Id.* LK could not recall whether she made such a demand or advised the school that the testing had not been done. *Id.* However, JH did receive counseling at Trend. *Id.*, at 30–31. LK continued to ask that counselor about testing but did not recall whether any requests were transmitted to the school. *Id.*

JH received counseling from Trend through the fourth or fifth grade. *Id.*, at 32. He also had a "big brother," a mentor who worked with him on school work. *Id.* Working with this mentor, JH received an honor roll mention for his fourth grade science project. *Id.*, at 33. JH also was identified for school counseling from the guidance counselor. *Id.*, at 36–37. JH continued to have behavior problems in the fourth grade. His teacher placed him in a segregated setting within the classroom so that he would not be distracted by the other students. *Id.*, at 39. At this point, LK began to ask for testing from the principal. *Id.*, at 40–41. However, JH's reading improved significantly in the fourth grade when he became interested in comic books. *Id.*, at 44. When JH's fifth grade teacher suggested that he take Ritalin, LK agreed and once he began the medication JH's behavior improved. *Id.*, at 45, 48. At some point when JH was in the fifth grade, LK had a discussion with the school's principal in which she demanded that JH be tested. *Id.* The principal told LK that he was already on a list of

---

**2.** LK testified that the teacher told her that she loved the afternoon because the students taking their dose of Ritalin at lunch would often fall asleep. *Id.*, at 17–18.

students to be tested. *Id.* Later, she learned that JH had been taken off the list because he did not qualify for the testing. *Id.*, at 49–50. Nonetheless, JH's teacher and the school CARE team identified him for testing which was performed by Thoms Rehabilitation. *Id.*, at 50–52, 57–58. After the testing, LK had a meeting with the psychologist and JH's teacher. *Id.*, at 52. The psychologist suggested that JH would benefit from occupational therapy which would help him learn organizational skills. *Id.* JH received this therapy once a week until the end of the school year. *Id.*, at 53. LK did not make any further inquiries of the school for testing. *Id.*, at 55.

In March of JH's fifth grade year, LK began to take him once a week for tutoring at the Orton Academy. *Id.*, at 56. At the end of the school year, JH's teacher recommended he repeat the fifth grade. *Id.*, at 59. LK spoke to the principal about this and the principal agreed to promote JH if he continued to receive therapy from Thoms and tutoring. *Id.*, at 59. LK did not tell the principal she was considering enrolling JH at the Orton Academy because she did not know if she would be able to do it. *Id.*, at 61. It is undisputed that LK did not provide any notification to the public school of JH's enrollment in the Orton Academy. *Id.*, at 61–62. The Academy offered smaller classes with more individual attention and the school day ran from nine in the morning until five in the afternoon. *Id.*, at 64. JH improved significantly. *Id.* JH attended Orton from August 1996 through June 1998. Exhibit 8, Affidavit of Victoria Remishofsky, *included in* Administrative Record. The owner of the Orton Academy averred that when LK enrolled JH there in the Fall of 1996, LK said she was going to sue the public school for reimbursement of the tuition costs. *Id.* Despite JH's poor grade performance during his first through fifth

grade, he consistently did well on end of year testing.

On March 3, 1998, LK's attorney wrote the Defendant demanding reimbursement for the tuition of the Orton Academy in the amount of $12,800, for transportation expenses in the amount of $21,600, and $1,500 in attorneys' fees.[3] Exhibit 9, Letter from Paul Erickson to Transylvania County Board of Education, dated March 3, 1998, *contained in* Administrative Record. In the event these sums were not paid within ten business days, counsel threatened to file a petition for a due process hearing. *Id.* On March 19, 1998, a petition for a contested case hearing was sent to the Defendant. Exhibit 5, Petition, *contained in* Administrative Record.

## IV. DISCUSSION

At the time LK withdrew her son from the County's school district, he had not been identified or evaluated as a disabled child and no individual education plan (IEP) had been prepared for him. The State concluded that LK's petition for a due process hearing filed two years after the child was unilaterally withdrawn was untimely. The ALJ and Review Officer declined to reach the issue of whether the County had properly identified JH as eligible for services and thus entitled to compensatory education as a remedy because it was not presented in the petition. The undersigned concurs in that assessment. The Plaintiff's prehearing statement, submitted at the same time as the petition, contains only one request for a remedy: "The issues to be resolved are those raised in the Petition for Contested Hearing and deal with whether or not the Petitioners are entitled to reimbursement from the Respondent for privately funding an appropriate education for JH." Exhibit 1, Petitioner's First Prehearing Statement, *included in* Administrative Record. No mention of compensatory education is

---

3. During the time that JH attended the Academy, he and his mother lived in Brevard. The Academy is located in Asheville.

made in the petition, the prehearing statement or any of the other pleadings filed on behalf of LK. Although counsel refers to the County's "child find" obligations, the remedy of compensatory education is not alleged in the pleadings. Therefore, the undersigned concurs in the State's determination.[4]

The "IDEA provides a panoply of procedural rights to parents to ensure their involvement in decisions about their disabled child's education.... They [ ] may present complaints with respect to such matters. They can air these complaints in an 'impartial due process hearing,' and in some cases, can appeal the findings and decision rendered in that hearing." *Sellers v. School Bd. of the City of Manassas, Virginia*, 141 F.3d 524, 527 (4th Cir.1998). Although the IDEA provides that parents may request an administrative due process hearing, it does not contain a time period within which to do so. 20 U.S.C. § 1415(b)(2). The Fourth Circuit has determined that the absence of a limitations period in the Act does not mean that no limitations period should apply to the IDEA. *Id.; Manning v. Fairfax County Sch. Bd.*, 176 F.3d 235, 237 (4th Cir.1999).

Plaintiff argues that LK was never made aware by the school of her options and thus, may not be held accountable for failing to invoke her right to a due process hearing. However, LK testified that JH's pediatrician diagnosed him with ADHD in the second grade although he made no report to the school. Despite her testimony that in the second grade, JH's physician had diagnosed him with a learning disability, LK also testified she continued to ask the school to test JH. She requested testing in the third grade but before it could be done, she transferred JH to a different school within the district. While in the third grade, JH was referred by the school for counseling and testing by Trend. The testing was not performed; however, LK

did not notify the school of that fact and did not demand that the school have the testing completed. In the fifth grade, the CARE team at the school referred him for testing by Thoms Rehabilitation which was accomplished. LK met with the psychologist and JH's teacher after the testing. Yet LK had no other communications with the school; she unilaterally withdrew JH from public school and placed him in the Academy.

> The purpose of requesting a due process hearing is to challenge an aspect of a child's education and to put the school district on notice of a perceived problem. Once the school district receives notice, it has the opportunity to address the alleged problem. Under [Plaintiff's] theory, a school would be potentially liable for unanticipated costs for alleged problems of which it is totally unaware. "Recovering tuition [or costs] is a remedy only if the free and appropriate public education (FAPE) guarantee has been violated, exhaustive administrative remedies have been tried before placement, *and the school has been notified.*" ... While [the Orton Academy] may have been of great benefit to [JH], we cannot agree that a school district must reimburse a parent for unchecked educational expenses.

*Thompson v. Board of Special Sch. Dist.*, 144 F.3d 574, 579 n. 3 (8th Cir.1998) (quoting Cindy L. Skaruppa, Ann Boyer & Oliver Edwards, *Tuition Reimbursement for Parent's Unilateral Placement of Students in Private Institutions: Justified or Not?* 114 Educ.Law Rep. 353, 354 (West 1997)) (emphasis added). Here, LK seeks reimbursement for tuition for a private school which she unilaterally chose and in which she enrolled JH during a time when there were no proceedings pending with the County. Moreover, because the County had never prepared an IEP for JH, it cannot be said that his education was inap-

---

**4.** Moreover, except as to future educational services, any such claim would also be un- timely.

propriate. *Michael C. v. Radnor Township Sch. Dist.*, 202 F.3d 642, 651 n. 8 (3rd Cir.2000).

> [The County] had no opportunity to provide an appropriate education for [JH] in the public school as is preferred under IDEA because he transferred to private school ... without any discussion with [County] officials about possible accommodations to meet his current needs. Reimbursement for private education costs is appropriate only when public school placement under an individual education plan (IEP) violates IDEA because a child's needs are not met.... Since [the County] was denied an opportunity to formulate a plan to meet [JH's] needs, it cannot be shown that it had an inadequate plan under IDEA. Reimbursement for the costs of his private placement would therefore be inappropriate because school officials were excluded from the decision ... and because no showing of inadequate services under IDEA can be made.

*Schoenfeld v. Parkway Sch. Dist.*, 138 F.3d 379, 382 (8th Cir .1998) (internal citations omitted); *accord Patricia P. v. Board of Educ. of Oak Park*, 203 F.3d 462 (7th Cir.2000). "[W]hen parents unilaterally withdraw their children from public school, absent mitigating circumstances, they are not entitled to reimbursement for private school tuition until they request review proceedings." *Warren G. v. Cumberland County Sch. Dist.*, 190 F.3d 80, 84 (3rd Cir.1999).

> [W]here proceedings were initiated more than two years after JH's [placement in private school], we must place into our equation the practical opportunity afforded the school district to [provide an] IEP or to determine definitively whether expenditures [in]curred outside the district could have been obviated by the filing of a prompt complaint. We are cognizant of the fact that the school district serves a very large student population, and in light of the numerous contacts it has with parents seeking the individual welfare of their respective children, mere notice of parental "dissatisfaction" does not alone put the Board on reasonable notice that the parents will challenge a particular IEP in the future and seek reimbursement of an interim unilateral placement in a private institution. Absent initiation of review proceedings within a reasonable time of a unilateral decision to transfer a child to a private institution, a school would not know to continue to review and revise an IEP, and the court would be left to hazard conjecture or hypothesis as to what the Board of Education might have proposed if it had been informed of the parents' continued intent to pursue an appropriate education for their child within the school district.... [T]he right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP. This is accomplished through the initiation of review proceedings within a reasonable time of the unilateral placement for which reimbursement is sought.

*Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 157–58 (3rd Cir.1994); *accord, Warren G. v. Cumberland County School District, supra; Lewisville Independent School District v. Brooke P.*, 16 EHLR 1313, 1315–16 (E.D.Tex.1990) **(parents' failure to request due process hearing constitutes waiver of right to reimbursement for cost of extended school year services prior to initiation of due process proceedings)**; *Garland Independent School Dist. v. Wilks*, 657 F.Supp. 1163, 1167 (N.D.Tex.1987).

It is clear that LK withdrew JH from the County schools and enrolled him in a private school prior to any discourse with the County over an appropriate education. Her request for due process was not made until two years later and was therefore untimely. And, most certainly the County has been prejudiced by the delay since it cannot show what an IEP for JH would have provided.

The undersigned also finds that this action may be disposed of on grounds other than timeliness. Unilateral withdrawal of a child from public school without an opportunity to evaluate his needs and without any involvement of school officials in the decision precludes reimbursement. "In these circumstances reimbursement for the expenses of his private education is not required even if it were assumed that private placement was appropriate to meet [JH's] needs.... We therefore need not consider whether [JH] was disabled within the meaning of IDEA." *Schoenfeld*, 138 F.3d at 382 (internal citations omitted). LK's "failure to see an IEP before placing [JH] in private school precludes reimbursement under IDEA." *Id.*

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Plaintiff's motion to exceed page limits is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the Plaintiff's motion for summary judgment and remand is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that the Defendant's motion for summary judgment is hereby **GRANTED.** A Judgment dismissing this case is filed herewith.

## JUDGMENT

For the reasons set forth in the Memorandum and Order filed herewith,

**IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED** that the Plaintiff's motion for summary judgment is **DENIED;** the Defendant's motion for summary judgment is **ALLOWED,** and this matter is hereby **DISMISSED WITH PREJUDICE** in its entirety.